UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CATHERINE GAUVREAU,<br><br>Plaintiff,<br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant.<br>______________________/ | Case No. 17-12525<br><br>Mark A. Goldsmith<br>United States District Judge<br><br>Stephanie Dawkins Davis<br>United States Magistrate Judge |

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 18, 20)**

# I. PROCEDURAL HISTORY

## A. Proceedings in this Court

On August 4, 2017, plaintiff Catherine Gauvreau filed the instant suit. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Mark A. Goldsmith referred this matter to the undersigned for the purpose of reviewing the Commissioner's unfavorable decision denying plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income benefits. (Dkt. 4). This matter is before the Court on cross-motions for summary judgment. (Dkt. 18, 20).

B. Administrative Proceedings

Gauvreau filed an application for a period of disability, disability insurance benefits, and supplemental security income on October 13, 2014, alleging disability beginning on February 1, 2012.[1] (Tr. 14).[2] The claims were initially disapproved by the Commissioner on April 8, 2015. (*Id.*). Gauvreau requested a hearing and on June 10, 2016, she appeared with counsel, before Administrative Law Judge ("ALJ") Ramona L. Fernandez, who considered the case *de novo*. (Tr. 15-25). In a decision dated July 25, 2016, the ALJ found that plaintiff was not disabled. (Tr. 25). The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on June 14, 2017, denied plaintiff's request for review. (Tr. 1-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**.

[1] At the administrative hearing, plaintiff confirmed that she was amending the alleged onset date to February 10, 2013. (Tr. 33). This date is not reflected in the ALJ's decision. In any event, as addressed more fully below, the ALJ's decision is supported by substantial evidence, and any error in calculating the alleged onset date is harmless.

[2] The Administrative Record appears on the docket at entry number 15. All references to the same are identified as "Tr."

## II. FACTUAL BACKGROUND

### A. ALJ Findings

Gauvreau, born December 7, 1977, was 34 years old on the alleged disability onset date. (Tr. 23). She has a high school education and obtained a GED. She has past relevant work as a customer service representative and CSR/manager. (Tr. 25). The ALJ applied the five-step disability analysis and found at step one that Gauvreau had not engaged in substantial gainful activity since February 1, 2012, the alleged onset date. (Tr. 16). At step two, the ALJ found that plaintiff's status post right shoulder arthroplasty, obesity, bipolar disorder, and panic disorder were "severe" within the meaning of the second sequential step. (Tr. 16). However, at step three, the ALJ found no evidence that her impairments singly or in combination met or medically equaled one of the listings in the regulations. (Tr. 16-17).

Thereafter, the ALJ assessed Gauvreau's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she must avoid concentrated exposure to hazards including moving machinery and work at unprotected heights. She is limited to unskilled work with simple instructions, only routine changes, no multiple tasks, and only occasional interaction with the public.

(Tr. 18). At step four, the ALJ found that plaintiff was unable to perform any past relevant work. (Tr. 23). At step five, the ALJ denied Gauvreau benefits because she found that there were jobs that exist in significant numbers in the national economy that she can perform. (Tr. 23-24).

B. Plaintiff's Claims of Error

Gauvreau's sole claim of error is that the ALJ did not create an accurate RFC, and therefore erroneously found work at step five. (Dkt. 18, at p. 8). Specifically, she contends that the ALJ did not account for her inability to maintain focus on a sustained basis. (*Id.* at p. 9-10). Gauvreau underwent a consultative examination in November 2013 where the examiner noted that Gauvreau had difficulty following directions and difficulty finishing things she started, among other things. She contends that it does not follow that someone with abnormal thought process, mood swings, and panic attacks can perform unskilled work on a sustained basis. She further posits that it is reasonable to infer that her mental health issues would likely cause her to be absent from work at least two days per month, which would be work preclusive. (*Id.* at p. 10).

C. Commissioner's Motion for Summary Judgment

The Commissioner contends that the ALJ fully explained and justified her RFC assessment. (Dkt. 20). The Commissioner points out that the ALJ's mental RFC—limiting Gauvreau to unskilled work with simple instructions, only routine

changes, no multiple tasks, and only occasional interaction with the public—is supported by two medical opinions from consultative examiners. (*Id.* at p. 5). Both examiners concluded that Gauvreau had no limitations in her ability to understand, remember, or carry out simple instructions. The ALJ gave both opinions significant weight. Gauvreau neither acknowledges nor contests these opinions. Instead she relies on an earlier opinion which concluded that plaintiff was unable to do work related activities. (*Id.* at p. 6). The ALJ gave the opinion little weight; plaintiff does not contest this determination.

The Commissioner asserts that the ALJ further supported her RFC determination in her discussion of the other medical evidence in the record. For example, Gauvreau was admitted to the hospital in May 2014 after ingesting a large number of drugs. (*Id.* at p. 8; Tr. 367, 397). She took the drugs to get high and was released from the hospital because she did not meet the criteria for admission. The ALJ also considered Gauvreau's family practitioner reports from 2014 through 2016. The mental status examinations were generally normal during this period and she was found to have responded favorably to her medications. (*Id.* at p. 9; Tr. 461, 466, 477, 484, 490, 491, 498, 507).

## III. DISCUSSION

### A. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty-stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis set forth at 20 C.F.R. §§ 404.1520, 416.920. Essentially, the ALJ must determine whether: (1) the plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to perform past relevant work, whether there is work in the national economy that the plaintiff can perform. (*Id*.). "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C. Analysis and Conclusions

20 C.F.R. § 404.1545 (2012) provides that the Residual Functional Capacity is "the most you can still do despite your limitations." The ALJ assessed an RFC accounting for plaintiff's mental impairments: Gauvreau was limited to unskilled work with simple instructions, only routine changes, no multiple tasks, and only occasional interaction with the public. (Tr. 18). The undersigned concludes that the ALJ did not err in fashioning the RFC and that substantial evidence supports the RFC.

In fashioning the RFC, the ALJ relied on medical opinions in the record as well as plaintiff's own statements about her daily activities and mental health. Plaintiff underwent a psychological consultative examination on March 26, 2015 with Melissa Rosenzweig, M.A. and Dr. Terrance Mills, Ph.D. (Tr. 442-44). Upon mental status examination, the examiner observed that Gauvreau was cooperative and polite, her contact with reality was intact, her affect was labile, and her mood was anxious and depressed. (Tr. 443). After reviewing her history

of mental illness and ability to partake in daily activities, the examiner noted that Gauvreau's stream of mental activity was logical, organized, and goal directed. Further, she had no suicidal ideation but had two past attempts. Her orientation, memory, fund of information, abstract thinking, and judgment were intact. (Tr. 443-44). The examiner concluded that Gauvreau had no limitations in the ability to understand, remember, or carry out simple instructions. Her ability to perform simple or multistep tasks "at a sustained pace" appeared to be adequate. (Tr. 444). The examiner further concluded that her ability to interact appropriately with the general public, accept instructions and respond appropriately to supervisors appeared to be moderately limited. (*Id.*). The ALJ gave this opinion significant weight. (Tr. 21). Gauvreau did not contest this determination.

The ALJ also relied on the State agency physician's mental assessment rendered on April 8, 2015. (Tr. 22). After reviewing the record evidence, Dr. Tripp concluded that Gauvreau was not significantly limited in the ability to carry out very short and simple instructions, to maintain attention and concentration for extended periods, to maintain regular attendance, and to sustain an ordinary work routine without special supervision. (Tr. 64). Dr. Tripp found her moderately limited in the ability to carry out detailed instructions. (*Id.*). The ALJ gave this assessment significant weight because it is consistent with the objective medical

evidence of record and Gauvreau's testimony at the hearing. (Tr. 22). Gauvreau does not contest this weight determination.

In addition to the opinions just discussed, the ALJ also discussed a consultative examination favorable to plaintiff. Ms. Kenna, M.A. and Dr. Terrance Mills[3] examined Gauvreau on November 15, 2013 for her alleged disability due to bipolar disorder, PTSD, and ADHD. The examiner found that Gauvreau can get along with people but that she has trouble completing things she starts, among other observations. (Tr. 273). The examiner concluded that because of her PTSD, bipolar disorder, panic attacks, and ADHD it appeared that she is "unable to do work related activities for an extended period of time. She has tried to work but her mental illness precludes her from doing so." (Tr. 275). The ALJ gave this opinion little weight because it is inconsistent with Gauvreau's own testimony and the objective medical evidence of record. (Tr. 21). Gauvreau does not contest this determination. However, the Commissioner, apparently in an abundance of caution addresses the ALJ's weight determination arguing that it is supported by substantial evidence. Because Gauvreau does not bring argument on the point, the

[3] Dr. Mills is the same doctor who signed off on the March 26, 2015 opinion discussed above. For the March 2015 exam, Gauvreau alleged disability due to PTSD, anxiety, depression, personality disorder, migraines, hypothyroidism, and obesity. (Tr. 442). These mental impairments overlap with the impairments Gauvreau alleged were disabling in November 2013. Thus, Dr. Mills was considering some of the same impairments (indeed more impairments) yet came to a different conclusion. This suggests either that Dr. Mills no longer considers the November 2013 opinion to be accurate, or at least that the November 2013 opinion is not determinative of Gauvreau's mental RFC.

undersigned will not address the weight determination. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones."). Further, based on this opinion Gauvreau concludes that she is disabled and that it can be inferred that her mental health issues would likely cause her to miss at least two days of work per month. (Dkt. 18, at p. 10). However, she cites no authority to support her proposition and no record evidence supporting absenteeism.

    As the Commissioner noted, the ALJ also addressed the other medical evidence pertaining to mental impairments. In February 2013, Gauvreau was treated for suicidal ideations with inpatient psychiatric care. During this hospitalization her condition improved in mood and behavior and she denied wanting to harm herself. (Tr. 265). Her mental status was largely normal. (Tr. 269). There were no reported issues with concentration or focus, (Tr. 269), and one physician noted that her concentration was "intact based on interview participation and tracking." (Tr. 251). Gaurvreau's other hospitalization in May 2014 was for an apparent overdose of various medications. However, Gauvreau stated that she took the medication to get high and because she did not meet the criteria for admission she was discharged. (Tr. 372-73). Due to lack of

attendance, she was later discharged from outpatient psychiatry following the incident. (Tr. 446). This history does not suggest work related limitations in concentration or the ability to sustain work activity. The ALJ also discussed treatment records from 2014 to 2016. Of these records three discuss depression and/or mental health. In November 2014, her depression was stable and she had normal mental status examination. (Tr. 20; Tr. 460, 461). However, in December 2014 and January 2015, her depression was noted as worsening, but she continued with normal mental status examination. (Tr. 465, 466, 483, 484). In January, the physician noted that her depression was alleviated by medication. (Tr. 483). Only the November 2014 treatment record noted difficulty concentrating. These records, however, do not establish that plaintiff cannot engage in simple, routine work activity on a sustained basis.

In light of the ample evidence supporting the conclusion that Gauvreau can sustain simple work, the undersigned finds that the RFC is supported by substantial evidence. *See Rogers*, 486 F.3d at 241 (Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."). The ALJ relied on two medical opinions demonstrating that plaintiff can sustain work activities. The ALJ discounted the earlier medical opinion which concluded that Gauvreau could not work; plaintiff did not challenge this determination. Further,

treatment notes establish that her depression is alleviated with medication or is stable and do not establish concentration problems that would affect her ability to work. Thus, there is no opinion given considerable weight in the record stating that plaintiff cannot sustain simple work. Without any evidence of functional limitations, there is no error where the RFC does not include such functional limitations. *Richard v. Astrue*, 2011 WL 4688788, at *5 (N.D. Ohio Oct. 4, 2011) (citing *Young v. Sec'y of Health & Human Servs*., 925 F.2d 146,151 (6th Cir. 1990) ("it is well established that a diagnosis alone does not indicate the functional limitations caused by an impairment."); *Kocher v. Comm'r of Soc. Sec*., 2015 WL 7307998, at *5 (S.D. Ohio Nov. 20, 2015), *report and recommendation adopted*, 2015 WL 9489750 (S.D. Ohio Dec. 30, 2015) (quoting *Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005) ("when 'there is no evidence in the record, of any functional limitations as a result of . . . obesity that the ALJ failed to consider,' a remand for further resolution of this issue is unnecessary."); *see also Morrison v. Comm'r of Soc. Sec.*, 2017 WL 4278378 (6th Cir. Jan. 30, 2017) ("[T]he absence of any limitation in the RFC to account for [an] impairment is supported by substantial evidence" where there is no evidence of any such functional limitation). Even if there were substantial evidence supporting a different RFC, if the ALJ's decision was within the "zone of choice," it must be affirmed. The undersigned finds that it is.

Regarding plaintiff's mention of an error at Step Five, the undersigned finds no error. Because the hypothetical question to the vocational expert on which the ALJ relied (Tr. 47) restates the RFC, and because, as discussed above, the RFC accurately portrays plaintiff's limitations, there is no error at Step Five. (Tr. 16, 52-53). *See Hatton v. Comm'r of Soc. Sec.*, 2018 WL 1278916, at *8 (E.D. Mich. Feb. 14, 2018), *report and recommendation adopted*, 2018 WL 1254948 (E.D. Mich. Mar. 12, 2018) (Where the hypothetical question to the vocational expert restated the RFC and the RFC accurately portrayed the plaintiff's limitations, there was no error at Step Five.); *Sellers v. Berryhill*, 2018 WL 989563, at *6 (E.D. Tenn. Jan. 22, 2018), *report and recommendation adopted*, 2018 WL 988084 (E.D. Tenn. Feb. 20, 2018) ("Having found that substantial evidence supports the ALJ's RFC determination, the Court finds the hypothetical question posed to the vocational expert, and the ALJ's reliance on the vocational expert's response, was appropriate and constitutes substantial evidence at step five that other jobs exist in the national economy that the Plaintiff can perform.").

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, and that defendant's motion for summary judgment be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: November 27, 2018

s/Stephanie Dawkins Davis
Stephanie Dawkins Davis
United States Magistrate Judge

**CERTIFICATE OF SERVICE**

I certify that on November 27, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

s/Tammy Hallwood
Case Manager
(810) 341-7850
tammy_hallwood@mied.uscourts.gov